**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-cv-0007 (TSC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

I.   OIP Has Not Demonstrated That It Conducted A Reasonable Search For All Responsive Records ...................................................................................................................... 6

II.  DOJ Violated FOIA By Segregating Responsive Email And Text Message Chains Into Multiple Records And Then Redacting Portions Of Those Chains As Non-Responsive Or Duplicative.................................................................................................................. 8

    A.   DOJ's Definition Of A "Record" Is Reviewed *De Novo* ................................. 9

    B.   DOJ's Segmentation Of Email And Text Message Chains Into Separate Records Violates FOIA ............................................................................................... 11

        1.   Definition Of "Record" Under FOIA .................................................... 11

        2.   An Email Or Text Message Chain Is One "Record" ............................. 13

        3.   DOJ's Approach To Defining "Records" Is Untenable......................... 16

CONCLUSION................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. FBI*, 971 F. Supp. 603 (D.D.C. 1997) ...................................................... 17

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) .......................................................... 9

*American Immigration Lawyers Ass'n v. Executive Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016) ............................................................................................... passim

*Bartholomew v. Avalon Capital Grp.*, 278 F.R.D. 441 (D. Minn. 2011) ..................................... 14

*Cause of Action v. FTC*, 799 F.3d 1108 (D.C. Cir. 2015) ............................................... 9

*Davis v. DOJ,* 460 F.3d 92 (D.C. Cir. 2006). .................................................................. 7

*DOJ v. Tax Analysts*, 492 U.S. 136 (1989) ................................................................. 12, 13

*Gordon v. U.S. Capitol Police*, 778 F.3d 158, 165 (D.C. Cir. 2015) ............................................ 12

*Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453 (D.C. Cir. 1996); ........................................... 17

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009) ................................................................................................. 14

*Judicial Watch, Inc. v. Dep't of Commerce,* 583 F.3d 871 (D.C. Cir. 2009) .............................. 19

*Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013) ............................ passim

*Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136 (1980) ......................... 13

*Lorillard v. Pons,* 434 U.S. 575 (1978) ..................................................................... 12

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ....................................... 6

*Oglesby v. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990) ............................................... 7

*Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400 (D.C. Cir. 2005) ......................................... 10

*Reporters Comm. for Freedom of Press v. DOJ*, 816 F.2d 730 (D.C. Cir. 1987) ...................... 10

*SafeCard Servs. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ................................................ 10

*Scudder v. CIA*, 25 F. Supp. 3d 19 (D.D.C. 2014) ...................................................... 13

*Shapiro v. CIA*, 247 F. Supp. 3d 53 (D.D.C. 2017) ..................................................... 10

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) ............................................................ 9, 13, 18

*Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441 (D.D.C. 2014) ........................................ 19

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) ...................................................... 10

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ........................................ 7

*Weisberg v. DOJ*, 745 F.2d 1476 (D.C. Cir. 1984) ........................................................................ 6

**Statutes**

5 U.S.C. § 552(a)(4)(A)(vii) ............................................................................................................ 9

5 U.S.C. § 552(a)(4)(B) ................................................................................................................ 11

5 U.S.C. § 552(f)(2)(A) ..................................................................................................... 2, 13, 18

5 U.S.C. § 552(f)(2)(A) ................................................................................................................ 11

Pub. L. 104-123, § 3, 110 Stat. 3048 ........................................................................................... 11

**Legislative Materials**

H.R. Rep. 104-795 ................................................................................................................... 11, 19

S. Rep. 104-272 ............................................................................................................................. 12

**Other Authorities**

*DOJ, OIP Guidance: Defining a "Record" Under the FOIA*, Feb. 15, 2017,
   https://bit.ly/2OBg0pl ....................................................................................................... 1, 9, 18

## INTRODUCTION

In this suit under the Freedom of Information Act ("FOIA"), Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") seeks records concerning the decision of the Department of Justice ("DOJ") to secretly invite a small group of reporters to view private text messages sent during the 2016 presidential campaign by two former members of Special Counsel Robert Mueller's team.  Based on the current record, CREW can narrow the matters remaining for adjudication to two issues.

First, the DOJ Office of Information Policy ("OIP") has failed to demonstrate that it is entitled to summary judgment on the adequacy of its search.  Although OIP's declarations acknowledge that the agency experienced a serious data migration problem that cast doubt on the adequacy of its initial search, the declarations fail to sufficiently describe the "remedial efforts" OIP undertook to address that problem in conducting its follow-on search.  Absent such an explanation, the agency's declarations do not support summary judgment.

Second, both OIP and the DOJ Office of Inspector General ("OIG") have engaged in a practice, pursuant to DOJ policy, whereby they have defined individual messages within email and text message chains as distinct "records," and then proceeded to withhold many of those purported "records" as "non-responsive" or "duplicative."  *See DOJ, OIP Guidance: Defining a "Record" Under the FOIA*, Feb. 15, 2017, https://bit.ly/2OBg0pl.  DOJ adopted this policy in the wake of the D.C. Circuit's decision in *American Immigration Lawyers Ass'n v. Executive Office for Immigration Review*, 830 F.3d 667, 677 (D.C. Cir. 2016), which squarely rejected agencies' practice of redacting non-responsive material from otherwise responsive records. DOJ's current efforts are nothing but a thinly-veiled attempt to circumvent the *AILA* decision by returning to the very practice disallowed in that case—this time through the tactical "defining" of

records, rather than the redaction of non-responsive material.  In other words, it is the same practice under a different label.

As in *AILA*, DOJ's position conflicts with FOIA's text, purpose, and case law. Specifically, it conflicts with FOIA's definition of "record," which focuses on how records are actually "maintained" by the agency "in its normal course of operations, in the absence of pending FOIA-related litigation."  5 U.S.C. § 552(f)(2)(A); *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 217 (D.C. Cir. 2013).  Consistent with this definition, an email or text message chain qualifies as one record, rather than a series of distinct records, because that is how such message chains are maintained in practice.

DOJ resists this conclusion, insisting that it should be able to define records based on agency officials' subjective interpretation of the scope of the FOIA request at issue.  Under this approach, "an entire string of emails, a single email within a string of emails, or a paragraph within a single email could potentially constitute a 'record' for purposes of the FOIA."  But this fuzzy, *ad hoc* approach to defining records invites arbitrary and inconsistent decision-making across agencies, and overlooks that a "record" for FOIA purposes has an objective meaning— tied to actual agency practice—that does not vary depending on which agency official is reviewing the document at issue.  It also gives agency officials substantial power to withhold messages that, while seemingly non-responsive on their face, provide helpful context that elucidates the meaning of plainly responsive messages within the same exchange.  In short, DOJ's position is plainly inconsistent with FOIA, and, if accepted, would significantly undermine the statute's primary goal of public disclosure.

The Court should therefore deny DOJ's motion for summary judgment as to the adequacy of OIP's search and DOJ's segmentation of email and text message chains into distinct records, and grant CREW's cross-motion for partial summary judgment.[1]

## BACKGROUND

On the evening of December 12, 2017, DOJ secretly invited a select group of reporters to its headquarters to view private text messages exchanged by Peter Strzok and Lisa Page, former members of Special Counsel Robert Mueller's team.  *See* Natasha Bertrand, In 'highly unusual' move, DOJ secretly invited reporters to view texts sent by ousted FBI agents, *Business Insider*, Dec. 13, 2017, *available at* http://www.businessinsider.com/peter-strzok-page-texts-mueller-russia-trump-2017-12.  The texts were sent during the 2016 campaign and were critical of President Trump.  *Id.*  DOJ reportedly leaked the texts to ensure the press saw them in advance of a hearing the next day before the House Judiciary Committee, at which Deputy Attorney General Rod Rosenstein was scheduled to testify.  *Id.*  This decision was "highly unusual," given that the texts were the subject of an ongoing investigation.  *Id.*

The next day, on December 13, 2017, CREW submitted FOIA requests to DOJ's OIG, OIP, and Office of Public Affairs ("OPA").  *See* Declaration of Vanessa R. Brinkmann, ECF No. 25-4 ("Brinkmann Decl.") Ex. A; Declaration of Deborah M. Waller, ECF No. 25-3 ("Waller Decl.") Ex. 1.  The requests sought "from DOJ's senior leadership offices all communications concerning the decision to invite reporters to DOJ on December 12, 2017, for the purpose of sharing with them private text messages sent during the 2016 presidential campaign by two former FBI investigators on Special Counsel Robert Mueller's team."  *Id.*  This included, without limitation, "(l) communications with reporters regarding this meeting; (2) communications

---

[1] CREW does not dispute the adequacy of OIG's search or any of DOJ's exemption claims.

within DOJ about whether, when, and how to share the text messages with reporters including, *inter alia*, the Office of the Inspector General, the Attorney General, the Office of Legislative Affairs, the Deputy Attorney General, the Associate Attorney General, the Office of Public Affairs, and any individual within the senior leadership offices of DOJ; and (3) communications with any member of Congress and/or their staff regarding this matter." *Id.* CREW further sought "documents reflecting who made the decision to release this material to reporters on the evening of December 12, 2017." *Id.*

The agencies acknowledged receipt of CREW's requests. Brinkmann Decl. ¶ 4; Waller Decl. ¶ 3. OIG provided a partial response on December 15, 2017. Waller Decl. Ex. 2.

After DOJ's statutory response deadlines elapsed, CREW filed this FOIA suit on January 3, 2018, ECF No. 1, and amended its complaint on January 16, after OIP granted its request for expedited processing, ECF No. 4.

OIG completed productions on April 23, 2018. Waller Decl. ¶ 18. OIP, on behalf of itself and OPA, made productions on April 30, June 1, June 29, and July 2, 2018. Brinkmann Decl. ¶¶ 7-10. OIP stated that the July 2 production would be its "final response to Plaintiff's FOIA request." *Id.* ¶ 10.

On July 9, 2018, the parties submitted a joint status report noting that "Defendant has issued its final responses" and requesting a briefing schedule under which Defendant's motion for summary judgment would have been due August 13, 2018. ECF No. 14 at 1. By Minute Order dated July 17, 2018, the Court entered the parties' proposed schedule.

On August 10, 2018, three days before its summary judgment motion was due, DOJ moved to stay the Court's briefing schedule, claiming that OIP needed to "re-run its search . . . in light of a recently-discovered technical issue concerning the data originally searched." ECF No.

15 at 1.  DOJ explained that OIP "recently became aware of a problem with the data on which some of its searches were run that stems from the migration of DOJ email onto new servers"— namely, that "some emails were not migrated onto the new servers."  *Id.*  Consequently, OIP had been conducting FOIA searches of an "incomplete collection of some custodians' email records," which "may have affected the search that was completed in this case."  *Id.*  Neither DOJ's motion nor its supporting declaration stated when OIP discovered this "technical issue," described the scope of the issue, or explained specifically what steps DOJ was taking to remedy it.  Rather, OIP sought an indefinite stay of the briefing schedule to give OIP additional time to re-run its search "once the data migration issue has been resolved."  *Id.* at 2; *see also* Declaration of Vanessa R. Brinkmann, ECF No. 15-1 ("August 2018 Brinkmann Decl.") ¶¶ 3-10; Brinkmann Decl. ¶ 27.

Following two status conferences, the Court issued a Minute Order on October 5, 2018, directing OIP to complete its production by October 12, 2018.  OIP completed its production by that deadline.

Both OIP's and OIG's productions contain numerous withholdings of individual emails and text messages within responsive message chains, which DOJ defined as distinct "records" and then withheld as "non-responsive" or "duplicative."  *See, e.g.*, Pl.'s Exs. 1-3.  For example:

- OIP withheld as a "nonresponsive record" the top email in a heated exchange between Sarah Isgur Flores, Director of OPA, and reporters from *Thomson Reuters*, with the subject line "Strzok texts."  Pl.'s Ex. 1.  In the unredacted portions of the email, a reporter presses DOJ on "who authorized [the] release" of the Strzok-Page text messages to reporters, and "what the legal rationale was for doing so, given the fact that the investigation is still open."  *Id.*

- OIP withheld as a "nonresponsive record" the top email in an exchange between Ms.
  Flores and a *Politico* reporter, with the subject line "Seeking comment on criticism
  today DOJ is undermining the overall Mueller probe?"  Pl.'s Ex. 2.  The unredacted
  portions of the email discuss at length DOJ's decision to release the Strzok-Page texts
  to reporters.  *Id.*

- OIP withheld as "nonresponsive records" several text messages between Ms. Flores
  and a *New York Times* reporter, in a chain where the reporter asks "can you please say
  who decided to put out the texts yesterday and why?"  Pl.'s Ex. 3.

DOJ has now moved for summary judgment.

## ARGUMENT

Two issues remain for adjudication.  First, OIP has failed to demonstrate it is entitled to
summary judgment on the adequacy of its search, because it has not provided enough details
regarding the data migration problems it encountered in August 2018 to demonstrate that its
search was reasonably calculated to uncover all responsive records.  Second, DOJ's decision to
segregate individual email and text message chains into multiple purported records, and its
redaction of those purported records as "non-responsive" or "duplicative," violates FOIA, and
CREW is entitled to summary judgment on that issue.

## I.    OIP Has Not Demonstrated That It Conducted A Reasonable Search For All Responsive Records

To obtain summary judgment, "the agency must demonstrate that it has conducted a
'search reasonably calculated to uncover all relevant documents.'"  *Weisberg v. DOJ*, 745 F.2d
1476, 1485 (D.C. Cir. 1984); *see also Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890
(D.C. Cir. 1995).  The agency carries this burden through declarations denoting "which files
were searched" and "reflect[ing] a systematic approach to document location."  *Oglesby v. Dep't*

*of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "If a review of the record raises substantial

doubt, particularly in view of 'well defined requests and positive indications of overlooked

materials,' summary judgment is inappropriate."  *Valencia-Lucena v. U.S. Coast Guard*, 180

F.3d 321, 326 (D.C. Cir. 1999) (internal citation omitted).  Ultimately, whether a particular

search is adequate depends on "the circumstances of the case."  *Davis v. DOJ*, 460 F.3d 92, 103

(D.C. Cir. 2006).

Here, OIP's declarations fail to demonstrate that the agency conducted a reasonable

search under the peculiar circumstances of this case.  OIP acknowledges that it experienced data

migration problems that led to it initially conducting an inadequate search of an incomplete set of

potentially responsive records.  *See* August 2018 Brinkmann Decl. ¶¶ 3-10; Brinkmann Decl. ¶

27.  OIP further states that after learning of this technical issue, it "began remedial efforts to

ensure that e-mail collections for records custodians are complete and captured in the appropriate

records repository" so that it could then "identify and re-run searches against the full collections

of e-mail custodians that were affected by" the data migration problem.  August 2018 Brinkmann

Decl. ¶ 8.  Yet OIP's declarations provide no details on the scope of the data migration problem,

when the problem was discovered, or the particular "remedial efforts" OIP undertook to address

it.  As a result, there is no way to gauge whether the agency's supplemental search efforts

"reflect a systematic approach to document location," *Oglesby*, 920 F.2d at 68, or fall short of

that standard.  The agency's vague and conclusory assurances of unidentified "remedial efforts"

fail to carry its burden, particularly since it has acknowledged that there were "positive

indications of overlooked materials" in its initial search.  *Valencia-Lucena*, 180 F.3d at 326

(internal citation omitted).  At minimum, OIP needs to explain (1) the scope of the data

migration problem and the particular systems of records it affected; (2) when and how the

problem was discovered; (3) the specific steps that OIP took to address the problem, including any testing or auditing OIP performed to ensure its supplemental search encompassed a complete set of potentially responsive documents.  Viewed in the light most favorable to CREW, OIP's declarations fail to demonstrate that it is entitled to summary judgment on the adequacy of its search.

## II.    DOJ Violated FOIA By Segregating Responsive Email And Text Message Chains Into Multiple Records And Then Redacting Portions Of Those Chains As Non-Responsive Or Duplicative

Both OIP and OIG defined individual emails and text messages within responsive message chains as distinct "records," and then withheld many of those purported records as non-responsive or duplicative.  *See* Pl.'s Ex. 1; Def.'s Mot. at 11-16.  Because this practice plainly violates FOIA, CREW is entitled to summary judgment on this issue.

Prior to 2016, DOJ and other agencies routinely took the position that they could redact non-responsive or duplicative information within otherwise responsive records.  But that practice was squarely rejected in *American Immigration Lawyers Ass'n ("AILA") v. Executive Office for Immigration Review*, 830 F.3d 667, 677 (D.C. Cir. 2016), where the D.C. Circuit held that FOIA "does not provide for withholding responsive but non-exempt records or for redacting nonexempt information within responsive records."  *Id.*  The court's holding flowed from the basic principle that "FOIA calls for disclosure of . . . responsive *record[s]*, not disclosure of responsive *information* within . . . record[s]."  *Id.* (emphasis added).

The *AILA* court stated that it had "no cause to examine" the "antecedent question of what constitutes a distinct 'record' for FOIA purposes," and thus issued no holding on that issue.  *Id.* at 678.  Seizing on this opening, DOJ has issued guidance stating that agencies can define portions of a single document as separate "records," and then redact those purported records as

8

non-responsive.  *See DOJ, OIP Guidance: Defining a "Record" Under the FOIA*,
https://bit.ly/2OBg0pl ("OIP Guidance").  DOJ invokes the OIP Guidance here in redacting
individual email and text messages within responsive chains as non-responsive or duplicative.
Def.'s Mot. at 13-16.  This practice, however, conflicts with FOIA's text and purpose.  It is also
nothing more than a thinly-veiled attempt to circumvent the D.C. Circuit's decision in *AILA* by
returning to the very practice disallowed in that case, albeit in a different form.  DOJ's position
should be rejected as a matter of law.

> ### A.    DOJ's Definition Of A "Record" Is Reviewed *De Novo*

As a threshold matter, DOJ's interpretation of what constitutes a "record" within the
meaning of FOIA and the application of that interpretation raise a legal question that must be
reviewed *de novo*.  FOIA explicitly instructs courts "to determine the matter de novo," 5 U.S.C.
§ 552(a)(4)(A)(vii), and courts "owe no particular deference to [an agency's] interpretation of
FOIA," *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015); *see also Al-Fayed v.
CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001) ("[B]ecause FOIA's terms apply government-wide[,] . .
. we generally decline to accord deference to agency interpretations of the statute, as we would
otherwise do under *Chevron*."); *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997) ("[W]e
will not defer to an agency's view of FOIA's meaning" because "[n]o one federal agency
administers FOIA," and "[o]ne agency's interpretation of FOIA is therefore no more deserving
of judicial respect than the interpretation of any other agency.").  Applying this principle, the
D.C. Circuit has refused to accord deference to agency interpretations of various FOIA
provisions.  *See, e.g.*, *Cause of Action*, 799 F.3d at 1115 (no deference to agency interpretation of
fee provisions); *Al-Fayed*, 254 F.3d at 307 (no deference to agency interpretation of "compelling
need" for expedited treatment); *Reporters Comm. for Freedom of Press v. DOJ*, 816 F.2d 730,

734 (D.C. Cir. 1987) (no deference to agency interpretations of exemptions), *rev'd on other grounds*, 489 U.S. 749 (1989).

The Court should apply the same reasoning here.  Since the definition of "record" is a statutory term, DOJ's interpretation of that term—as set forth in the OIP Guidance and elsewhere—is entitled to no deference.  Whether DOJ applied the correct legal standards in defining "records" is instead a question of law reviewed *de novo*.  *Cf. United States v. Deloitte LLP*, 610 F.3d 129, 134 (D.C. Cir. 2010) (the question whether correct legal standards were applied is reviewed *de novo*); *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (same).

DOJ insists that a "presumption of good faith" applies to an agency's definition of a record.  Def.'s Mot. at 14.  But DOJ is conflating agency interpretations of statutory terms (which are *not* entitled to deference) with factual statements made in agency affidavits (which *are* entitled to deference, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).  Again, the legal standard an agency applies in defining particular "records" is reviewed *de novo* review; no presumption of good faith applies.

DOJ relies on *Shapiro v. CIA*, 247 F. Supp. 3d 53, 75 (D.D.C. 2017), which concluded, without citing any authority, that the "burden will first rest with the agency to justify its actions when singling out a responsive record from a greater compilation of documents," and that "[i]f satisfactory, the agency's explanation will merit a presumption of good faith."  This appears to be nothing more than a recognition of the settled proposition that a presumption of good faith applies to factual assertions made in an agency declaration, not a holding that courts must defer to the agency's legal position on what constitutes a "record" for FOIA purposes.  Insofar as the

court's reasoning could be construed to support the latter proposition, it is inconsistent with the law of this Circuit.

### B.   DOJ's Segmentation Of Email And Text Message Chains Into Separate Records Violates FOIA

Agencies must process FOIA requests as follows: "first, identify responsive records; second, identify those responsive records or portions of responsive records that are statutorily exempt from disclosure; and third, if necessary and feasible, redact exempt information from the responsive records." *AILA*, 830 F.3d at 677.  Although the D.C. Circuit in *AILA* had "no occasion" to consider the threshold question of what constitutes a "record" for FOIA purposes or "the range of possible ways in which an agency might conceive of a 'record,'" *id.* at 678, this case presents such an occasion.

### 1.   Definition Of "Record" Under FOIA

FOIA defines "record" as "any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(f)(2)(A).  Congress added this definition through the Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-123, § 3, 110 Stat. 3048, 3049.  It did so to ensure that electronic records, in addition to paper documents and other tangible objects, were covered.  *See* H.R. Rep. 104-795, 18 (1996) ("Records which are subject to the FOIA shall be made available under the FOIA when the records are maintained in electronic format.  This clarifies existing practice by making the statute explicit on this point."); *id.* at 11 ("FOIA's efficient operation requires that its provisions make clear that the form or format of an agency record constitutes no impediment to public accessibility.").

Embedded in § 552(f)(2)'s definition of "record" is the term "agency record," a statutory term of art that predated the 1996 amendments.  *See* 5 U.S.C. § 552(a)(4)(B) (authorizing courts

"to order the production of any *agency records* improperly withheld from the complainant") (emphasis added).  Although FOIA "does not provide any definition of 'agency records,'" there was a well-developed body of case law construing that term when Congress passed the 1996 amendments.  *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 219 (D.C. Cir. 2013) (citing cases).  And it is presumed that Congress was aware and approved of these judicial interpretations of "agency record" when it enacted the definition of "record" in 1996.  *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 165 (D.C. Cir. 2015) ("Where Congress 'adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.'" (quoting *Lorillard v. Pons*, 434 U.S. 575, 581 (1978)).  For a document to be an "agency record," an agency must both "(1) 'create or obtain it, and (2) 'control[]' it at the time of the FOIA request."  *Judicial Watch*, 726 F.3d at 217 (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 144-45 (1989)) (alterations omitted).

Of particular relevance here, the D.C. Circuit has held that in "deciding whether a document is an agency record under FOIA, [courts] examine ***how the agency would treat the records in its normal course of operations***, in the absence of pending FOIA-related litigation." *Id.* at 219 (emphasis added).  The Circuit's analysis conforms with § 552(f)(2)'s definition of "record," which refers to information as it is "maintained by an agency."  Section 552(f)(2)'s legislative history likewise reinforces that Congress wanted records to be defined in accordance with how they were actually "maintained" in practice.  *See* S. Rep. 104-272, 27 (1996) (FOIA "requires that Federal agencies provide records to requesters in any form or format *in which the agency maintains those records*.") (emphasis added).  Focusing on how records are actually maintained is also consistent with the longstanding principle that FOIA "does not obligate

agencies to create" records; "it only obligates them to provide access to those which it in fact has created." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *see also Scudder v. CIA*, 25 F. Supp. 3d 19, 37 (D.D.C. 2014) (requester is entitled to a "copy of the requested records in a form already maintained by the defendant").

This standard helps to ensure that records are defined by objective criteria, not the vagaries of the requester's intent or the agency's interpretation of that intent. *See Tax Analysts v. IRS*, 117 F.3d at 613 ("The meaning of FOIA should be the same no matter which agency is asked to produce its records."). It also prevents agencies from exercising their "discretion" to artificially divide a single record into multiple records whenever it wishes to shield information it simply does not want to produce. Granting such discretion to agencies is flatly inconsistent with FOIA's purpose, which Congress enacted specifically "'to *curb* th[e] apparently unbridled discretion'" to decide "what information to disclose" that agencies possessed under FOIA's predecessor statute, as well as to achieve the "goal of broad disclosure." *DOJ v. Tax Analysts*, 492 U.S. at 150-51 (emphasis added).

In light of the above, a "record" under FOIA is properly understood as (1) any material containing information, (2) created or obtained by an agency, (3) within an agency's control when the request is submitted, and (4) in the full native form in which it is maintained by the agency at the time of the request. *See* 5 U.S.C. § 552(f)(2)(A); *Judicial Watch*, 726 F.3d at 217.

### 2.     An Email Or Text Message Chain Is One "Record"

Applying the above principles, an email or text message chain ("Electronic Message Chain") constitutes one "record" for FOIA purposes. That is because the final message in an Electronic Message Chain incorporates the prior messages into a single whole, and that is the form in which DOJ "maintains" Electronic Message Chains "in its normal course of operations,

13

in the absence of pending FOIA-related litigation." *Judicial Watch*, 726 F.3d at 219.  Indeed, there is no indication that, in the normal course, DOJ segregates each of the individual messages within the final message of an Electronic Message Chain and stores them separately.  It instead appears, based on DOJ's productions, that the agency searches for and retrieves an Electronic Message Chain as a single cohesive document and that, only after being retrieved in this form, DOJ segregates the message chain into separate "records" solely for FOIA purposes.  This *post hoc*, litigation-driven exercise—which was adopted solely to circumvent the result of the Circuit's decision in *AILA*—is fundamentally inconsistent with the realities of how Electronic Message Chains are maintained.

Defining individual messages in Electronic Message Chains as separate records also ignores the nature of that particular mode of communication.  An Electronic Message Chain is a conversation.  It encompasses a series of messages that build off one another, intertwined as part of a cohesive whole.  Giving agencies discretion to segregate individual messages based on subjective interpretations of responsiveness invites over-withholding and abuse, which FOIA requesters have no effective means to refute.  It also risks depriving the requester and the public of necessary context that could help elucidate the meaning of plainly responsive messages.  *Cf. Bartholomew v. Avalon Capital Grp.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (in civil discovery context, holding that "[r]edaction is an inappropriate tool for excluding alleged irrelevant information from . . . otherwise responsive" documents, because "[i]t is a rare document that contains only relevant information," and "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information"); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the

portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context").

A few examples of DOJ's redactions in this case illustrate the point:

- OIP withheld as a "nonresponsive record" the top email in a heated exchange between Sarah Isgur Flores, Director of OPA, and reporters from *Thomson Reuters*, with the subject line "Strzok texts." Pl.'s Ex. 1. In the unredacted portions of the email, a reporter presses DOJ on "who authorized [the] release" of the Strzok-Page text messages to reporters, and "what the legal rationale was for doing so, given the fact that the investigation is still open." *Id.*

- OIP withheld as a "nonresponsive record" the top email in an exchange between Ms. Flores and a *Politico* reporter, with the subject line "Seeking comment on criticism today DOJ is undermining the overall Mueller probe?" Pl.'s Ex. 2. The unredacted portions of the email discuss at length DOJ's decision to release the Strzok-Page texts to reporters. *Id.*

- OIP withheld as "nonresponsive records" several text messages between Ms. Flores and a *New York Times* reporter, in a chain where the reporter asks "can you please say who decided to put out the texts yesterday and why?" Pl.'s Ex. 3.

In each of these examples, DOJ withheld individual messages from a chain that was otherwise directly responsive to CREW's FOIA request, frequently where the subject line indicated that the entire message chain was responsive. And DOJ's withholding of the top, or most recent, message in an email chain is particularly problematic, because that is the email that ties together the entire record. Even accepting as true DOJ's assertions that the withheld messages are not directly responsive, they likely shed light on or provide context for the surrounding messages,

which indisputably are responsive.  The FOIA officer reviewing the messages may not

appreciate that context or may have misconstrued the scope of CREW's request in determining

responsiveness.  That is why FOIA does not authorize agencies to pick and choose what is and

what is not responsive from within an otherwise responsive Electronic Message Chain, which, as

outlined above, qualifies as a single record, not a series of separate records.

### 3.      DOJ's Approach To Defining "Records" Is Untenable

As noted, DOJ's legal position on defining records is set forth in the OIP Guidance.  *See*

Def.'s Mot. at 13-16 (relying on OIP Guidance).  That guidance was issued in response to the

D.C. Circuit's decision in *AILA*, which rejected agencies' practice of redacting non-responsive

information from otherwise responsive records.  *See* OIP Guidance ("As a result of the D.C.

Circuit's ruling in *AILA*, it will be important for agencies to carefully define what they consider

to be the 'records' responsive to any given FOIA request.").  The guidance, which is nothing but

a transparent effort to circumvent *AILA*'s holding through the tactical "defining" of records,

suffers from multiple legal flaws.

*First*, the OIP Guidance relies extensively on "some helpful principles" from *AILA* that it

says should "guide agencies in making their determinations" of defining records.  But the

statements OIP relies upon from *AILA* are pure dicta.  The D.C. Circuit could not have been

clearer on this point.  *See AILA*, 830 F.3d at 678 ("Here, the parties have not addressed the

antecedent question of what constitutes a distinct 'record' for FOIA purposes, and we have no

cause to examine the issue."); *id.* ("We have no occasion here to consider the range of possible

ways in which an agency might conceive of a 'record.'").

*Second*, the OIP Guidance's first substantive principle is that "[a]gencies can use the

definition of record found in the Privacy Act to guide their decisions as to what is a record for

purposes of the FOIA.  Thus, each 'item, collection, or grouping of information' on the topic of

the request can be considered a distinct 'record.'"  But it is inappropriate to consult other

statutes' definitions of the term "record" since, as outlined above, FOIA's own text, legislative

history, and Circuit precedent provide a sufficient answer to the question.  At any rate, OIP's

analysis overlooks that FOIA and the Privacy Act serve fundamentally different purposes: "The

Privacy Act—unlike the Freedom of Information Act—does not have disclosure as its primary

goal.  Rather, the main purpose of the Privacy Act's disclosure requirement is to allow

individuals on whom information is being compiled and retrieved the opportunity to review the

information and request that the agency correct any inaccuracies."  *Henke v. U.S. Dep't of*

*Commerce*, 83 F.3d 1453, 1456–57 (D.C. Cir. 1996); *see also Alexander v. FBI*, 971 F. Supp.

603, 606 (D.D.C. 1997) (whereas the "chief purpose of FOIA is to provide citizens with better

access to government records than first provided under the Administrative Procedures Act," the

"Privacy Act was adopted in order to 'provide certain safeguards for an individual against an

invasion of personal privacy.'").  The Privacy Act's "fine-tuned, content-based approach" to

defining records, *see* OIP Guidance, may further *that* statute's goals of protecting personal

privacy and ensuring accuracy in government records of individuals.  But it thwarts *FOIA's*

"primary goal" of public disclosure.  The Privacy Act's definition of record thus is not an apt

reference point for FOIA purposes.

The OIP Guidance suggests that the *AILA* court endorsed looking to the Privacy Act's

definition of record, but that is false.  Rather, the D.C. Circuit cited the Privacy Act, along with

two other statutes, merely to illustrate its point that FOIA's definition of record is not as specific

as other statutes' definitions of record.  *See AILA*, 830 F.3d at 678.  Nowhere did it suggest that

the Privacy Act's definition of record should inform the FOIA definition.

17

*Third*, the OIP Guidance also states that "[t]he nature of a FOIA 'record' is defined by both the content of a document and the subject of the request."  The guidance, tellingly, cites nothing in the statute, legislative history, or precedent supporting this principle, which DOJ appears to have conjured out of thin air.  That is not surprising, since DOJ's position conflicts with the conclusion, discussed above, that FOIA defines the term record by reference to how records are actually "maintained" by the agency "in its normal course of operations, in the absence of pending FOIA-related litigation."  5 U.S.C. § 552(f)(2)(A); *Judicial Watch*, 726 F.3d at 219.  In other words, records are defined objectively by reference to actual practice, not the after-the-fact whims of agency officials.

*Fourth*, DOJ's approach to defining records creates incongruities with other aspects of FOIA law.  For starters, it conflicts with the rule that the "meaning of FOIA should be the same no matter which agency is asked to produce its records."  *Tax Analysts v. IRS*, 117 F.3d at 613.  That is because, under DOJ's approach, a single Electronic Message Chain could be treated differently by different agencies, or even by different components of the same agency, depending on how the various entities construed the chain or the FOIA request.  *See* OIP Guidance ("[B]ased on the subject of a particular FOIA request, an entire string of emails, a single email within a string of emails, or a paragraph within a single email could potentially constitute a 'record' for purposes of the FOIA.").  This is a natural consequence of granting agency officials discretion to define records based on their subjective interpretations of FOIA requests, rather than objective facts concerning how the records are maintained by the agency in its normal course of operations.

DOJ's position also conflicts with the rule that FOIA only applies to records in existence at the time of the request.  *See Judicial Watch, Inc. v. Dep't of Commerce*, 583 F.3d 871, 874

(D.C. Cir. 2009) ("FOIA . . . applies only to existing records."); H.R. Rep. 104-795 at 6, 1996

U.S.C.C.A.N. at 3449 (congressional report accompanying 1996 amendments stating that "FOIA

establishes a presumptive right for the public to obtain *identifiable, existing* records of Federal

departments and agencies.") (emphasis added).  If, as DOJ asserts, a "record" simply does not

exist until the agency defines it *in response* to a FOIA request, the record necessarily did not

"exist" at the time of the request.  The OIP Guidance does not address this paradoxical

consequence of DOJ's interpretation.

    *Fifth*, DOJ insists that its approach is justified by "practical considerations" of efficiency,

cost, and resource allocation.  Def.'s Mot. at 14-15.  But even if these concerns were valid, they

are irrelevant to the statutory definition of a "record."  Insofar as DOJ believes that the definition

is too burdensome, its concerns are properly directed to Congress, not this Court.  *See*

*Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 455 (D.D.C. 2014) (noting that "the

dominant objective of FOIA is disclosure" and that the statute "anticipates that requests for

records may . . . require an agency to carry an unusual workload"), *aff'd*, 2015 WL 4072055

(D.C. Cir. June 29, 2015).

## CONCLUSION

    For the foregoing reasons, the Court should deny DOJ's motion for summary judgment as

to the adequacy of OIP's search and DOJ's segmentation of email and text message chains into

distinct records, and grant CREW's cross-motion for partial summary judgment.

Dated: November 16, 2018

Respectfully submitted,

*/s/ Nikhel Sus*
Nikhel S. Sus
(D.C. Bar No. 1017937)
Anne L. Weismann
(D.C. Bar. No. 298190)
Citizens for Responsibility and Ethics in
Washington
455 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
aweismann@citizensforethics.org

*Counsel for Plaintiff*

20