UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON,<br><br>   Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>   Defendant. | Civil Action No. 18-cv-007 (TSC) |

**MEMORANDUM OPINION**

  Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, challenging Defendant Department of Justice's (DOJ) response to a FOIA request. Before the court are Defendant's Motion for Summary Judgment (ECF No. 25 (Def. MSJ)) and CREW's Cross-Motion for Partial Summary Judgment (ECF No. 27 (Pl. MSJ)). Upon consideration of the motions, the responses and replies thereto, and for the following reasons, the court will GRANT DOJ's motion and DENY CREW's motion.

  **I. BACKGROUND**

  In December 2017, CREW sent FOIA requests to DOJ's Office of the Inspector General (OIG) and Office of Information Policy (OIP) seeking "[a]ll communications concerning the decision to invite reporters to DOJ on December 12, 2017, for the purpose of sharing with them private text messages sent during the 2016 presidential campaign by two former FBI investigators on Special Counsel Robert Mueller's team," and "documents reflecting who made

1

the decision to release this material to reporters on the evening of December 12, 2017." (ECF No. 25-4 (Brinkmann Decl.) ¶ 3; ECF No. 25-3 (Waller Decl.) ¶ 2.) The request to OIP specified that it included:

> (1) communications with reporters regarding this meeting; (2) communications within DOJ about whether, when, and how to share the text messages with reporters including, inter alia, the Office of the Inspector General, the Attorney General, the Office of Legislative Affairs, the Deputy Attorney General, the Associate Attorney General, the Office of Public Affairs, and any individual within the senior leadership offices of DOJ; and (3) communications with any member of Congress and/or their staff regarding this matter.

(Brinkmann Decl. ¶ 3.) CREW filed this case on January 3, 2018 and subsequently amended its complaint. (ECF No. 4 (Am. Compl.).)

After OIP conducted its initial search, it became "aware of a problem with the data on which some of its searches were run . . . stemming from the migration of DOJ email onto new servers." (Def. MSJ at 10; *see also* ECF No. 15-1, (Aug. 10, 2018 Brinkmann Decl.).) OIP then "worked closely" with DOJ's Justice Management Division's Office of the Chief Information Officer to "re-run the searches" for responsive records. (Brinkmann Decl. ¶ 27.) The re-run produced additional responsive records, which OIP provided to CREW. (Brinkmann Decl. ¶ 31.)

The parties disagree on two issues: whether OIP provided enough information about the data migration issue for the court to assess the adequacy of its search, and whether DOJ improperly decided that each email or text, rather than each thread, constitutes a "record."

## II.   LEGAL STANDARDS

### A. <u>Summary Judgment</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  A court may enter summary judgment on a "claim or defense . . . or [a] part of each claim or defense."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "material" only when it involves facts "that might affect the outcome of the suit under the governing law."  *Id.*  "[F]actual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson*, 477 U.S. at 248).  The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified."  *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

In considering a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  The nonmoving party's opposition must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

### B. FOIA

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies.'"  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't*

*of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)).  Federal agencies must comply with FOIA requests to make their records available to the public unless the requested "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)–(b).

Agencies have "an obligation under FOIA to conduct an adequate search for responsive records," *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016), and "[a]n inadequate search for records constitutes an improper withholding" under the statute.  *Schoenman v. FBI*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011).  When a FOIA requester challenges an agency's response, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The court employs a reasonableness test to determine whether an agency's search for responsive materials is adequate.  *Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017)(citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)).

"An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits [or declarations] describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (alteration in original).  The court must accord agency affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Safecard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).  However, "it is well-established that a conclusory affidavit that gives 'no detail as to the scope of the examination . . . is insufficient as a matter of law' in demonstrating the adequacy

of the search." *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 87 (D.D.C. 2007) (quoting *Weisberg v. U.S. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. F.B.I.*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Summary judgment for the agency is only appropriate when it proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).  In considering a motion for summary judgment for the Defendant, the court analyzes all underlying facts and inferences in the light most favorable to the FOIA requester.  *Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 271 (D.D.C. 2015).  A motion for summary judgment should be granted in favor of the FOIA requester, however, only "[w]hen an agency seeks to protect material which, even on the agency's version of the facts falls outside the proffered exemption[.] *Coldiron v. U.S. Dep't of Justice*, 310 F.Supp.2d 44, 48 (D.D.C.2004) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C.Cir.1992)).

### III.   ANALYSIS

While "a motion for summary judgment cannot be 'conceded' for want of opposition," *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016), "[t]his does not mean . . . that the Court must assess the legal sufficiency of each and every [claim] invoked by the government in a FOIA case." *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017).  In *Shapiro*, the court held:

> Where the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or

information, there is no case or controversy sufficient to sustain the Court's jurisdiction.

*Id; see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Accordingly, the court will address only those arguments that CREW offers in response to DOJ's motion for summary judgment.

### A. Search

CREW argues that OIP has failed to adequately explain what went wrong with the data migration and what steps were taken to resolve the problem, and therefore has not met its burden of showing that the search was "reasonably calculated to uncover all relevant documents.'" *Weisberg*, 745 F.2d at 1485.

CREW's argument is unavailing.  OIP has made clear that after it learned of the data issue, it took "remedial efforts to ensure that e-mail collections for records custodians [we]re complete," and then "re-r[a]n searches against the full collections of e-mail custodians."  (August 10, 2018 Brinkmann Decl. ¶ 8.)  Though OIP does not go into detail about the nature of the data problem, this description reasonably assures the court that the original search (with which CREW takes no issue) was run against a complete data set.  OIP has thus met its burden to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

### B. Definition of a Record

In *American Immigration Lawyers Association v. Executive Office for Immigration Review* ("AILA"), the D.C. Circuit held that agencies may not distinguish between responsive and non-responsive portions of a record, but instead must disclose the entirety of a responsive record "as a unit."  830 F.3d 667, 677 (D.C. Cir. 2016).  For example, if the record is an email

thread that contains one responsive email and six non-responsive emails, the agency must disclose the whole thread (other than any exempt portions).  Or, if the record is a text conversation with some responsive text messages, the agency must disclose the whole conversation.

The issue here is that rather than considering a whole email thread or a whole text chain as "a record," OIP and OIG defined each single email and each single text as "a record," in accordance with OIP guidance permitting such a definition.  By defining "a record" in this way, OIP and OIG avoided having to turn over the whole thread; instead they were required only to produce select emails and texts within the thread.  CREW describes this practice "nothing more than a thinly-veiled attempt to circumvent the D.C. Circuit's decision in AILA," and argues that it violates FOIA.[1]  (Pl. MSJ at 9.)

The court owes "no particular deference to [an agency's] interpretation of FOIA," and will thus review *de novo* the legal question of what constitutes a record.  *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015); *Al-Fayed v. CIA,* 254 F.3d 300, 307 (D.C. Cir. 2001) (no deference to agency interpretation of "compelling need" for expedited treatment); *Reporters Comm. for Freedom of Press v. DOJ,* 816 F.2d 730, 734 (D.C. Cir. 1987) (no deference to agency interpretations of exemptions), *rev'd on other grounds*, 489 U.S. 749 (1989).

---

[1] At least two courts in this district have analyzed whether an email within a thread counts as a record, with different conclusions. *Compare American Oversight v. HHS,* 380 F. Supp. 3d 45, 45 (D.D.C. 2019) (holding that the agency's treatment of a single email, rather than the thread, was "unduly literal and stingy") *with Gellman v. Dep't of Homeland Security*, 2020 WL 1323896, at *3 (D.D.C. March 20, 2020) (holding that agencies are not prohibited from defining a single email in a thread as the record).  DOJ also cites two cases where "agencies have treated individual emails as individual records."  (DOJ Opp. at 5 (citing *Hyatt v. U.S. Patent & Trademark Office*, 364 F. Supp. 3d 141, 141 (D.D.C. Sept. 28, 2018 and *Gawker Media, LLC v. United States Dep't of State*, 266 F. Supp. 3d 152, 161 (D.D.C. 2017).)  But those two cases hold little precedential value because the parties did not dispute, and the courts did not address, the propriety of defining a single email within a thread as the record.

"A record" under FOIA "includes any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(f)(2)(A).  The D.C. Circuit notes that this description "provides little help in understanding what is a 'record' in the first place." *AILA*, 830 F.3d at 678.  CREW takes a different view, arguing that out of this language a requirement can be discerned: a record must constitute only "the full native form in which it is maintained by the agency at the time of the request." (Pl. MSJ at 13.)  This means that if an agency stores emails in threads (as CREW asserts DOJ does), then the full thread, and nothing less, is the "record."

CREW's interpretation is unpersuasive.  The statute's description of a record is preceded by the word "includes" 5 U.S.C. § 552(f)(2)(A), which CREW omits from its quotation of the text. "Includes" suggests that the statute seeks not to narrow or limit what counts as a record, but to expand it.  As CREW itself points out, Congress added this language "to ensure that electronic records, in addition to paper documents and other tangible objects, were covered." (Pl. MSJ at 11 (citing H.R. Rep. 104-795, 18 (1996) ("Records which are subject to the FOIA shall be made available under the FOIA when the records are maintained in electronic format.  This clarifies existing practice by making the statute explicit on this point.")).)  Thus, the clause does not narrow the range of what counts as a record; it expands it.

CREW argues that two phrases within the statute's description of "a record" support its interpretation.  First is "agency record," which CREW argues was a term of art at the time of the statute's passage and should therefore be accorded a specific meaning. (Pl. MSJ at 11–12.) Second is the phrase "when maintained by the agency," which CREW argues supports its theory that a record is defined by the manner in which an agency stores it. (*Id.* at 12.)  But even if CREW is correct that the statute gives specific meaning to the word "record" (and the D.C.

Circuit is mistaken in noting that it provides "little help"), then that specific meaning describes what is to be *included* in the definition of a record. The statute does not say that all other types of records are *excluded*. In other words, CREW's argument, at best, speaks to what the statute includes; it says nothing about what types of records the statute excludes.

CREW also argues that its test for what constitutes a record would help "to ensure that records are defined by objective criteria, not the vagaries of the requester's intent or the agency's interpretation of that intent." (Pl. MSJ at 13.) The court agrees. But unless that test is found within the statute, the court cannot enforce it. If CREW seeks to have a "record" defined by the manner in which it is maintained by the agency, "its concerns are properly directed to Congress, not this [c]ourt." (Pl. MSJ at 19.)

Despite the expansive language of the statute, there is a limiting principle. While the D.C. Circuit has never addressed the "question of what constitutes a distinct 'record' for FOIA purposes," *AILA*, 830 F.3d at 678, it has, in *dicta,* alluded to a boundary of reasonableness: "We find it difficult to believe that any reasonable understanding of a 'record' would permit withholding an individual sentence within a paragraph within an email on the ground that the sentence alone could be conceived of as a distinct, non-responsive 'record.'" *AILA*, 830 F.3d at 679. After all, though the statute gives little content to the words "agency record," those words have their own meaning, and calling a sentence in an email, or a word in a sentence, "a record" stretches that meaning too far. Moreover, the D.C. Circuit has warned that "[t]he term 'agency records' should not be manipulated to avoid the basic structure of the FOIA: records are presumptively disclosable unless the government can show that one of the enumerated exemptions applies." *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1494 (D.C. Cir. 1984); *see also Judge Rotenberg Educ. Ctr. v. FDA*, 376 F. Supp. 3d 47, 59–62 (D.D.C.

2019) ("courts must 'be careful to ensure that the term agency records . . . not be manipulated'"); *Institute for Policy Studies v. CIA*, 388 F. Supp. 3d 51, 53 (D.D.C. 2019) (holding that the agency "slice[d] the definition of 'record' too thinly.")

Here, DOJ's definition of a record, given the language of the request and the documents in question, does not stretch past the bounds of reasonableness.  As OIP and OIG explained in their Declarations, the decision to narrow the scope of the records was in part because CREW sought communications "concerning the decision to invite reporters to DOJ on a specific date and for a specific purpose" (Waller Decl., Ex. 1 at 2; Brinkmann Decl., Ex. 1 at 2), "and many of the email communications that OIP and OIG reviewed were email conversations that veered into unrelated topics."  (Waller Decl. ¶ 12; Brinkmann Decl. ¶ 93.)  Because there is no basis to find that a record must always be provided in the form in which it is stored, and because the search for the records was reasonable, the court will grant summary judgment for DOJ.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be GRANTED and Plaintiff's cross-motion for partial summary judgment will be DENIED.

A corresponding Order will follow shortly.

Date:  May 26, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge